Richardson, J.
dissenting. — It is of importance that the first ground of appeal should be rightly expounded and decided. Because it arises out of a demand of strict right. The legal position of the prisoner is this : That after the two juries impannelled, had been exhausted, without obtaining a jury for his trial, it was the right of the prisoner to have the names of all the supernumerary jurors put into the box and drawn by the child: and to accept or challenge them as then drawn. So that the prisoner was not compelled to accept or challenge such supernumeraries in the order in which the clerk had arranged their names, on the first day of the term, when the regular panels had been constituted for the general business of the term, by tbe express provision of the Act of 1731. It is true that a very general practice has obtained for the clerk, on the first day of the term, to put all the names of the jurors, then present, in the box, and to make out a regular catalogue of the names as drawn.
But this is done for no other purpose than to get the first twenty-four names, which have been drawn, and not challenged or excused by the Court, in order to constitute the two juries.
See 7th see. 3d Stat. 276.
For it might happen to require all the names present, before twenty four were accepted.
In fact, this frequently occurs — for instance, in Charleston ; where, in practice, supernumeraiies are very sparse. But after such catalogue of names has been made by the clerk, it happens almost at every Court, that supernumeraries arrive successively, especially in bad weather; and their names are put down by the clerk, at the foot of the drawn supernumeraries : and often swell the number, by many additional names which have never been drawn.
Now it is clear that all such names constitute equally the supernumerary jurors, although some have been drawn and others not.
The question before the Court is, therefore, whether the prisoner was not entitled, as a legal right, to have his additional jurors drawn indiscriminately from all such supernumeraries, and not bound to take them in the order put down by the clerk.
This question is best solved by the terms of the jury Act of 1731, which is as follows: “That the names of the persons who shall have been duly summoned, as shall appear, *523 to serve as petit jurors, shall be put into a distinct and separate box or glass, and out of the names of the persons so summoned and appearing, the Chief Justice, &c. shall cause twelve persons to be drawn by a child, &c. and the persons so drawn shall serve on all trials at such Court. Butin case any of the jurors so drawn, shall be challenged, &c. or shall absent themselves, or neglect to attend, that, then, the names of other persons shall be drawn out of the same box or glass, to fill up and complete the said jury.” So that it is evident by the Act, that the draught oí the supernumeraries is conditional. That is, if any of the first twelve be challenged and set aside by the Court.
I need scarcely call to mind that the Act of 1791 provides for the organization of two juries in the same manner.
Now I apprehend that it is dearly underthis last clause of the 7th section, that the practice has arisen of drawing and putting down the names of all the, then, attending jurors.
This is done to meet the common occurrence of one or more of the twenty-four being challenged, excluded, or not attending. That is, to fill up and complete the jury in case of such vacancies.
*524 jt js dear that the Act of 1731 orders the draught, only in order to constitute the jury, and then a draught in order to fill up the places of those jurors of the regular panel, who may not appear, or being challenged, or the like.
At every change, a draught is clearly contemplated. And assuredly ought to be made out of all the supernumeraries. Those who come in tardily, as on Tuesday for instance, and are not to have the advantage of the jurors who attend punctually on Monday.
For my part, I never knew of any other practice, even in a civil trial, whenever such draught was demanded by either party. And I can conceive of no other just construction of the jury laws, although it is very convenient, and saves time, to follow the catalogue made out in the first instance, by the clerk. And if there be no objection made, it is well so to do.
But where a man’s life is at stake, it is fit to allow him the exact provision, and the terms provided by the Act; which clearly points out a selection, from all the supernumeraries, by impartial lot. Only suppose this case, to wit: that the prisoner had objected peremptorily to the first twenty of the two regular juries. He must, then, have to make up his trial jury from the next four, and the eight first names before *525 drawn by the clerk, of the supernumeraries. But he desires to have it made out of the last eight names of jurors, that, had come in so late, that the clerk had not drawn them; but had simply added them to the supernumeraries. In such case shall not the prisoner have a right to the draught? Does not the Act plainly give him the right ? Shall the prisoner be told, in answer to his demand of such lot, that it is safer for him to take additional jurors, according to the names set down in a previous catalogue? That, by this catalogue, he became the better acquainted with his probable judges ? But is not the reply to that observation, — that his enemy (the prosecutor,) had also the same advantage • and being at large, had better opportunity of practising the counter advantage, by reason of the like better knowledge, equally afforded to him by the same catalogue of names.
No such argument can weigh in the construction of the Act, against the right of the prisoner; and the proper answer is “ ita lex non scripta est.” Such, at least, is my decided construction of the jury Acts, and no convenient practice can change so essential a right. And I will now shew that the *526 same construction was put by the whole Court, in the case of the State v. James Sims: Judge Johnson, delivering the opinion of the whole Court, says, &c.: “In making up a jury for the trial of a prisoner, entitled to challenge, the uniform practice is to begin by calling the foreman of jury No. 1, to be sworn, and then the others of that jury, in the order in which they are drawn. If any are challenged, then to call the names of the jury No. 2, in the same order. If that is exhausted, then the names of the supernumerary jurors are to be drawn from the box or glass, until the jury for the trial of the prisoner is completed.” Language cannot be plainer. There can be no mistaking it. After juries No. 1 and 2 shall have been exhausted, “then" which nytstmean, at no other time, the names of the supernumeraries shall be drawn, until the jury be completed.
2 Bail. 29.
This was what the prisoner demanded, and what Judge Johnson calls “the uniform practice.” How can it be supposed that the Judge meant by the words, “are then to be drawn” the imperfect and past draught made by the cleik, for the sole purpose of making up the two regular juries?
*527 I am persuaded that the mere file of the clerk, in making out a catalogue of the supernumerary jurors, for a certain purpose, and some practice of calling the supernumeraries according to that order, has led to the mistaken construction put upon the able exposition of the jury law of 1731, in the cuse of the State v. Sims, and has led to the denial of the right of the prisoner, to demand a draught out of all the supernumeraries, in the present instance.
To shew to demonstration, that I have given the true construction to the meaning of the Court, in the case of the State v. Sims, let it be only remembered that Sims’s counsel demanded to have the jury drawn, for the case, according to the order of names set forth in the venire. Judge Johnson, *528 after laying down the uniform practice, concludes thus: “If, then, the Court either felt the inclination, or were satisfied of the power, there is no reason to institute in its place, the mode proposed in behalf of the prisoner, for it has, at least, the advantage over that in subjecting a second time to lot, the order in which the jurors shall be called, and is so far a protection against packing a jury.” Herein we see that Sims actually had the very lot which the prisoner now claims.
The advantage, pointed out by the Judge, consists in the second lot, to wit: in- drawing the supernumeraries. But this second lot is precisely that which the prisoner complains was denied to him. In a word, he was denied what Judge Johnson says “ is so far a protection against packing a jury.” *529 That is, the Judge considers the “ second lot” a protection against packing a jury, and it is justly so characterized.
For illustration, let us apply the practice to the recent Act, which allows to each party, in a civil action, the right of objecting to two jurors, and to have their places supplied from the supernumeraries.
If such parties are to have the advantage of drawing their substituted jurors, from the first names on the clerics cata-logue, it is easy to foresee that the new jury may, in some degree, be packed; which obvious consequence would tend much to interfere with the impartial lot, by which jury trials ought to be conducted, and any specific order of names would afford the same opportunity.
Lastly, it may be asked why the jury, in every case, is not drawn from the whole number of attending jurors 1 This would be a way of carrying out the impartial lot, intended by the jury Act. And this would certainly be done, but for the express provisions made by the jury Act, that the first twelve names, drawn from the jury box, shall constitute the jury to serve in all the trials before the Court.
It is, therefore, under the express provision of the Jury Acts, that the two juries regularly drawn, are first called upon to serve in every case, civil or criminal.
But as soon as the express provision of the Acts is satisfied, the established principle of drawing the jurors by lot, supervenes, in order to prevent the possible packing of the jury, by either party’s knowing who are to be the particular jurors, to be put in the place of those who were challenged and dismissed from the panel. Impartial lot is the cardinal principle of the Jury Acts, and ought to be strictly adhered to in every possible instance, where jurors are to be substituted, and especially if done by the act of the parties litigant.
This important principle is required as well for the most guilty as the innocent. From both the letter, therefore, and the spirit of the Jury Acts, the prisoner having been denied the right to have his additional jurors drawn from the whole number of the then attending supernumerary jurors, is entitled, by a fair and customary construction of the Acts, to a new trial.